15-5188 Mark Dave Hill v. Bart Masters Arguments not to exceed 15 minutes per side. Mr. Sokoloff for the appellant. Good morning, Your Honors. Eugene Sokoloff. I'm pro bono counsel for the appellant, Mark Hill. I'd like to reserve four minutes of my time for rebuttal. And can you keep your voice up or adjust the mic? Sure. Let me bring it towards me a little bit here if that's better. Thank you. May it please the Court, the government agrees with us on three crucial points. It agrees that my client is not a career offender. It agrees that he could not have brought his claims any sooner. And it agrees that the district court got it wrong, that some sentencing errors are eligible for Savings Clause relief. Yet the government insists that my client must spend as many as nine extra years in prison serving out a sentence Congress never authorized. That's wrong. The error here was fundamental for two reasons. Congress could not have been clearer when, in Section 994H, it directed the Sentencing Commission to create a special enhancement to give punishments at or near the statutory maximum for those defendants who had previously been convicted of two or more crimes of violence or narcotics offenses. The law is now clear and the government concedes that one of Mr. Hill's predicates can never be a predicate to support that enhancement. In other words, Mr. Hill is not among the defendants, that category of defendants that Congress singled out for special punishment under the career offender enhancement. And if that wasn't enough to establish that the Court here acted outside its congressionally conferred discretion, the sentence it ultimately settled on of 300 months was outside the upper bounds of Mr. Hill's properly calculated mandatory guidelines range. Now, the government says that because that was a guidelines range and not a statutory range, the Court was still within its discretion. But that argument is precisely what the Supreme Court rejected in Booker, where it explained that it might be tempting at first glance to conclude that because departures were available under even the mandatory guidelines, that the District Court's discretion was limited only by the statutory maximum, but that as a matter of fact, the properly calculated guidelines range was the entire scope of the District Court's discretion and the departures were only available under certain specified circumstances set out by the guidelines themselves. So, you're suggesting that the line we should draw is between Booker sentences and sentences that exceed the statutory maximum and other collateral attacks. That's right, Your Honor. I think it's critical to this case that the sentence that the Court ultimately selected was above that mandatory guidelines range, that this is a pre-Booker case. I think we would be in a different situation. You know, we don't take a position on it, but I think the situation would be different if the guidelines were merely advisory. But at the time, and I think this comes out clearly in Booker, the range of punishment authorized by the facts admitted by the defendant or the facts found by the jury was that guidelines range. It was not the entire range up to and including the statutory maximum. So, you would follow the Seventh Circuit? That's right. The Seventh Circuit in Narvaez and Brown are our two best cases. And your basis for this, you're not finding any type of statutory basis. Rather, the basis is just the third prong, fundamental unfairness. I think that's right, Your Honor, yes. We agree with the government that there has to be some sort of a fundamental error. And where we find that is in these two elements that I began with. The first is that Congress here has not just the Sentencing Commission acting on its own conferred discretion from Congress, but Congress itself prescribed certain enhanced penalties for defendants in a particular category. Now, at the time Mr. Hill was sentenced, he appeared to fall into that category. But the law is now clear that he didn't. So we think that that already is a strong indication that Mr. Hill was not intended for this kind of punishment. Of course, his maximum statutory sentence was life in prison, was it not? That's right, Your Honor. He got 15 years. So he's way under the max, statutory max, even, as it is. So what's your theory of fundamental unfairness? Because we're talking about the problem is that you're under Section 2241, as opposed to 2255 or some other statutory basis. And isn't 2241 much more restricted than most as a basis to now get post-conviction relief? I think that's right, Your Honor. And I think, you know, we think that there's some appeal to the government's perspective, that the question really is what was the scope of the sentencing court's congressionally conferred discretion? In other words, what was the scope of the court's sentencing authority? And you're absolutely right that the statutory maximum here is life. And so, you know, under the advisory guidelines, certainly, the Supreme Court and this court has recognized a sentencing court has broad discretion to sentence a defendant to anything within that range. But under the mandatory guidelines, things were different. And in Lubert, actually, this court recognized that when it explained that a post-Booker definition of statutory maximum, looking back to the pre-Booker cases, would be the maximum sentence that was allowable on the basis of the facts admitted by the defendant under the guidelines. So the court's discretion, because of the mandatory nature of the guidelines, was limited, actually, by that guidelines range and not by the theoretical statutory maximum. How many circuits are against you on this point? So we have one circuit that's clearly against us, and that's the 11th, in an opinion called Gilbert. Now, the government has also pointed out that the 8th Circuit has taken a view that is in tension with ours, but there's a distinction in the 8th Circuit's case. That's Sunbear. In the Sunbear case, the difference is, and it's noted in a footnote in the case there, that unlike Narvaez and Brown in the 7th Circuit, and unlike our case, the defendant there was actually sentenced within what would have been the appropriate guidelines range if that career offender enhancement hadn't been applied erroneously. So I think that's a crucial difference here. The court, and even Booker, contemplates that if there's a sentence that is nevertheless within that discretionary range, it doesn't pose a Sixth Amendment problem, and for the same reasons, it wouldn't pose a fundamental error here. The court is acting within its discretion. But that's not what happened here. Mr. Hill was sentenced outside the upper bounds of his correctly calculated guidelines range. Even though they overlapped? They overlapped by one month. That's right, Your Honor. But this sentence was in excess. That's right. Explain the narrowest conception that you have for what you think is available. I understand that after Brown, the 7th Circuit has even declined to extend Brown to petitioner sentence post-Booker. That's right. So you're limited. Define for us what you are asking for at the narrowest range. Pre-Booker sentencing, right? All right. Explain it. Right. So pre-Booker sentencing, and yes, that's right. In Hawkins, the 7th Circuit has declined to extend Brown to advisor guideline sentences. We were fine with that. So it's pre-Booker, a sentence that exceeds the upper bounds of the pre-Booker correctly calculated range, so that it falls outside of the court's congressionally conferred discretion to sentence. And I think that if we wanted to go even further, we could say that there's something special about the career offender guideline, because here you have a clear, direct congressional command that certain individuals will be subject to a higher punishment if they have these two qualifying convictions and not if they don't. It's really very much like ACCA, which the government argues does present a clear separation of powers problem. Under ACCA, if you don't have those predicates, the government says you have a separation of powers problem because Congress has said either you get 10 years maximum or you get 15 years under ACCA. But what they understand is that the separation of powers issue does not arise where you are not sentencing someone beyond a statutory maximum. I mean, isn't that their distinction? That's their distinction. Why is yours better? So, Your Honor, I think that their distinction just can't be squared with Booker, that Booker is crystal clear that the range authorized by the facts admitted by the defendant, the scope of the sentencing court's discretion is the guidelines range. That's why the Booker court's conclusion was that the apprendee problem kicks in at the extent of the guidelines range. And there's really no, especially in a case like this one where Congress has specifically spoken to the category of defendants that it wants singled out for special punishment, there's no less of a separation of powers problem with the court that applies that special punishment to a defendant who clearly falls outside the category of defendants Congress had in mind when it directed the Sentencing Commission to create that enhancement, and one in which Congress essentially does the same thing, but simply through a substantive... What would be the maximum sentence if you were right? If we sent it back to the district court for re-sentencing, what sentence would your man get if he wasn't subject to the career criminal enhancement? So, if he were not subject to the career criminal enhancement, his advisory guidelines sentencing range today, that's in light of retroactive guidelines amendments, would be 235 months. So, even if he were sentenced at the very top of that range, that would still be five years less than what he got when he got 300 months originally. But the judge could say, I'm giving you the same sentence because the statutory maximum is life. That's right, Your Honor, but I think there's two reasons why that is not relevant. First of all, the fact that a judge could do that today doesn't change the fact that a judge couldn't have done that at the time that the sentence was imposed. So, I think that the question is whether the sentencing court exceeded its discretion. That answer doesn't change because the law happens to have changed in the meantime. But the other thing is that in order to do that today, the judge would have to depart by three levels up, and there is no indication in the record. We should remember that Mr. Hill was originally sentenced in the bottom tenth percentile of what the court thought was the right sentencing range. So, there's nothing in the record here to suggest that a court would think a three-level departure was necessary. And under Gaul, even under the advisory guidelines, a court would still need to start with the right guidelines calculation and then provide some explanation for why a departure of that nature was warranted. But is the test your expectation of what the court might do or what the court is allowed to do? So, Your Honor, our test doesn't rely at all on what could happen on remand. We really don't think. We think that, you know, that is akin to putting in a harmless error test here. We don't think that's appropriate at all. We think really the question is whether the sentencing court could have imposed the sentence that the defendant received. But to the extent that the court is interested in that question of what might happen on remand, we think it's significant that it's very unlikely that Mr. Hill would be subjected to the same exposure as he was then, simply because there is such a large gulf between the correct range that applies today and the range that he fits today. Your position is your man's a drug dealer but wasn't an especially bad drug dealer. That's right. And, actually, that's what the sentencing guidelines are there for, right? The Sentencing Commission has considered the universe of drug dealers, has considered what sorts of punishments are appropriate for drug dealers in exactly Mr. Hill's position, with his criminal history, with his level of severity of their offense, and they have set forward this guideline's range, 188 to 235 months, as the appropriate range to punish drug dealers who are exactly in Mr. Hill's position. And one of the crucial differences about that erroneously imposed career offender guideline enhancement was that it automatically bumped up his offense level to 37, that had nothing to do with what he had actually done in the substantive offense, and it automatically shifted his criminal history category to 6, even though that had nothing to do with his originally calculated criminal history category. It set him aside in what the Seventh Circuit called a category reserved for the especially violent and incorrigible. On the basis of a conviction, it's now clear cannot support that recategorization. You're out of time, and I'm just going to ask this. Is that a basis to further limit this case? Could you carve out some rule that says that, okay, we're not going to let you bring 2240 motions by themselves, but if you're in a category where your applicable range has subsequently been lowered and you're not properly a career offender under the guidelines, then we'll entertain the motion because of the circumstances? I think that that would still apply. That would still cover the universe of people who are probably concerned with these changes in the law. But I don't think that limitation is necessary, because of the first condition that we talked about, which is that the sentence nevertheless has to be outside the original properly calculated mandatory guidelines range, so that even if there hadn't been this shift with the retroactive guidelines amendments, Mr. Hill would still be entitled to a range that was entirely lower than the sentence he received. So we think that's a sufficient limitation. One more brief question. Explain why, again, the basis for your claim that he's ineligible for consideration under Amendment 782 because of the type of conviction. Right. So, Your Honor, when an individual is sentenced as a career offender, they are then categorically prohibited from seeking relief. That's right. So, for example, I'm sorry, I know I'm going over time here, but in the ordinary course, an individual who's been sentenced under a set of guidelines, but whose guidelines have been shifted as a result of retroactive amendments, can make a special application to the district court to have his sentence adjusted. A career offender can't do that. So Mr. Hill can't do that, even though he's not a career offender. Which is part of the basis of your argument that makes it a fundamental miscarriage. That's right, Your Honor. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the court and counsel. Michael Rotker from the Department of Justice on behalf of the respondent warden. I think the questioning of my distinguished adversary this morning has sharpened the issue. The question before the court ultimately is, how are we going to define a fundamental error for purposes of this successive collateral relief mechanism? And obviously the starting point has to be, if we're going to give real content to fundamental, it's got to be something more than a garden variety error. It's even got to be something more than the sort of reversible error that might support relief on direct review. And the line that the department has taken ever since Begay and the cases that have followed it, is that a fundamental error, because these sentencing errors on these recidivist enhancements can arise under statutory regimes like ACCA and under the guidelines as well, we have drawn a distinction that we believe is principled, and it's also consistent with the vast majority of the case law, save for the Seventh Circuit, and also with this court's statement in United States v. Peterman. And the general distinction is this, that a sentence that is without legislative authorization from Congress, a sentence above the statutory maximum, such as under the ACCA, is a fundamental error, because it is the sentencing analog, if you will, of a Bailey-type error. It's action by an Article III court when the legislature has not authorized that sort of action. And just as we don't in Bailey, for example, we had individuals who were convicted of engaging in conduct that was not a crime, and that's a separation of powers problem, because we don't have common law crimes. Well this is the ACCA problem, is the sentencing analog, because you have a Article III court, understandably because of the law at the time, imposing a sentence that we now know it did not have authorization to impose. A statutory maximum, one defined by Congress, not the Sentencing Commission, but one defined by Congress, is absolutely inviolable. So in the ACCA setting, for example, if the maximum is 10 years without the ACCA enhancement, no matter how bad the offender, no matter how bad the offense, a sentencing court can't impose a sentence of 11 years, or 10 years in a month, or 10 years in a day. It's inviolable. Right, but that's a good point, and that's a separation of powers point. But the statute doesn't say a fundamental error consisting of a violation of the separation of powers. So we have to get to the question of what is a fundamental error. So it's a fairly compelling argument that, look, okay, we understand, and someone can make the argument that whenever you have a situation like this, it's a fundamental error. But the argument is fairly compelling to say, look, you have to look at what really happened. This person was sentenced under circumstances where it was in effect statutory, because that's the way the guidelines were treated at that point. And yes, theoretically, they could have gotten life, but that's not the way things happened. Well, respectfully, Your Honor, and again, the question is what's fundamental. We don't agree with the basic premise that even when the guidelines were mandatory, we don't agree that they were a statutory maximum. I mean, again, at the risk of stating what may be the obvious, the guidelines are not passed by the House and Senate. They don't go to the president for a signature, and they're not codified in the United States Code. They are not statutes. They are, as the Supreme Court itself said in Stinson v. United States in 1993, when the guidelines were mandatory, they are administrative regulations, promulgated by an agency, if you will, by the Sentencing Commission. The fact that they were mandatory doesn't transform them into statutes. And that gets to my point about a true legislative statutory maximum is inviolable, but a guidelines range is not. And I don't believe that... But why? But you're making a leave. You're making that the definition of fundamental error. Well, that's based on the way the courts have analyzed the issue. I mean, again, in Peterman, the courts said courts generally don't grant collateral relief for sentences below the statutory maximum. In Boosley, for example, the Supreme Court tethered. I know that wasn't a successive case, but the Supreme Court reasoned that a Bailey-type error is fundamental because of the separation of powers concerns. It's a common law crime. And what we're saying is that the analog of that is there are no common law sentences. What about the retroactive drug amendments? You have a situation where Congress clearly... All right, you're going to say it's the Sentencing Commission. Right, there's a mechanism in the guidelines for giving effect to retroactive amendments. Right, but Congress so clearly delegated this type of change to the commission so that they didn't have to engage in the nitty-gritty of making these. So why isn't that fundamental? The fact that somebody who is intended to be among the group of people who at least get a shot at it is artificially carved out for a reason that has no substance. Well, I think there are a variety of reasons why, Your Honor. First of all, again, the question of what is fundamental, we have to have some reference point. And if we're just going to say every time there's been a misapplication of the guidelines, a fortiori it's fundamental, that respectfully I think blurs the line between error and fundamental error. We're trying to give some meaningful content based on precedent about what a fundamental error is. And just saying that a misapplication of the guidelines, we've conceded that there was an error. And arguably if this case were on direct review, which it is not, it's 12 and a half years final, long past that. And significant finality interests are entitled to great weight in determining this balance between the defendant's relitigation interest and society's interest in having repose. Right, but there's a difference between saying we're going to dig it all up and a situation where now the commission has done something new and is declaring a new right, and there's somebody who can't take advantage of it because of an old injustice. So why not at least recognize it in those situations? That happens all the time. I mean Teague v. Lane prohibits retroactive application of all sorts of new rules. I mean those are doctrines of the Supreme Court, through interpreting statutes, but that's the way it works. Collateral review is always more demanding. But you have a provision, 2241, you have a vehicle that contemplates that certain errors will be corrected because they're so unfair. Well, and I guess that's the ultimate question, is what defines what makes an error so unfair? And in our view, and I think you can find support for this in the Supreme Court's decision in United States v. Adonisio, the fact that the sentence may have been incorrectly, the premise for the sentencing proceeding, if you will, the starting point was incorrect, that in and of itself doesn't suffice to make the error fundamental. In Adonisio, which is a pre-guidelines case, but I think it's worth mentioning, it was a parole case. The defendant was facing a 10-year maximum, and the judge gave him 10 years with the expectation that he would only serve a third of that under the parole guidelines. The parole guidelines later changed, and the defendant was forced to serve the full 10 years. And he sought collateral relief. And the Supreme Court said, no, you don't get relief for this sort of error, even though it increased your sentence, if you will, beyond what the judge had intended. And one of the linchpins, and this is the reason why I bring it up, is the Supreme Court said, among other things, that the sentence, the 10 years, was within the statutory limits provided by Congress. So the fact that the parole guidelines, which can be analogized to the sentencing guidelines, if you will, the fact that the parole guidelines range was lower, the Supreme Court said, look, this is still a legal sentence. It's not outside the bounds prescribed by Congress. And I think that's a useful analogy that the court can take into account here in deciding what is and isn't fundamental. I also just want to emphasize that there's been a lot of weight that's been placed on Booker here and how that somehow changes the calculus. Booker, as the court well knows, was dealing with the Apprendi implications for Sixth Amendment purposes. We're not dealing with a Sixth Amendment question here. And what we've cited the court to are two cases that I just want to mention. The first is the Supreme Court's decision in 2008 in a case called Rodriguez, not Rodriguez, but Rodriguez with a Q. And there the Supreme Court was interpreting a statutory provision in the ACCA that referred to the maximum term of imprisonment provided by law. And what's relevant here is that the court made very clear, contrary to what my opponents have said, is that the outer limit of a sentencing guidelines range, even a mandatory guidelines range, is not the true maximum. It's not this proposed equivalency between a guidelines range and a statutory maximum is incorrect. Because the top of a guidelines range doesn't fully constrain a sentencing court's authority. Now there may be, and there were, certainly at the time of Booker, tight constraints on how much a district court could go above that top of the guidelines range. But the point is the court had some discretion. It's not that the discretion didn't exist. And Booker doesn't say otherwise. Booker doesn't say the courts didn't have discretion. And that's where this equivalency between somehow fundamentally unfair between a guidelines range being sort of a quasi-statute, a mandatory guidelines range, and a true legislative maximum, I think it falters. But I would also point the court, if there were any lingering doubts, to the decision in Lubert, which is this court's decision from 2005, which is cited in my brief. In Lubert, the defendant received a sentence above his mandatory guidelines range, and he sought to appeal. And the government on appeal said, well, I'm sorry, you have an appeal waiver. And Mr. Lubert said, well, yeah, but there's an exception to the appeal waiver for sentences above the statutory maximum. And this court rejected that argument and said, no, you've got a sentence above the guidelines range, the mandatory guidelines range. That's not a statutory maximum. This notion, you know, guidelines are guidelines, and statutes are statutes. But guidelines aren't statutes. And they simply don't constrain the discretion. In our view, the sentencing court had the legal authority, unlike in an ACCA case, where if the defendant was ACCA-ineligible under no circumstance could the court give him a 15-year sentence again. He's constrained to 10 years. The government has conceded that litigating position. We've conceded that as our litigating position. And the Eleventh Circuit is the only court to consider it, and they've embraced that. They've said, yes, government, there's a lot of truth to that. There's a lot of substance to this separation of powers rationale. Is your position that in order to avail oneself of the 2241 remedy, the discarriage of justice fundamental defect is limited to this one instance that we're in the kind of claim that we're talking about? On the sentencing side, yes. We've conceded there are two types of errors that would qualify. The first is the Bailey scenario. But on the sentencing side of the ledger, yes. It's our view that we're an intervening retroactive decision of statutory construction, so it can't be remedied under 2255, under a successive 2255. When that sort of error occurs under a statutory sentencing enhancement that triggers a bump above the maximum, that is the sentencing analog of the Bailey error. That is the quintessential example of a fundamental error, because society has no interest in allowing an individual to be incarcerated beyond the limits of what Congress has provided. Your opposing counsel argues society has no interest in requiring someone to be incarcerated beyond the time frame of the sentencing guidelines. But again, it was also... So we're trying to define fundamental. Right. And I think one point that the court can take into account in deciding what's fundamental was a question that I believe Judge Gilman raised. If this case were remanded, hypothetically, we don't think it should be, but hypothetically, if it were to be remanded, it would be advisory guidelines would apply, and a life maximum would be the maximum. If the defendant remains eligible to receive the same exact sentence today, then how can it be a fundamental error? How can that be equated with a Bailey situation, where under no circumstance can possession of a gun be considered use? Or an ACCA error, where you cannot get... It's categorically off limits. I think that's a factor. Along with Adonisio, for example, which referenced the statutory maximum, I think you're entitled to take into account in defining what's fundamental that he's still exposed to it. Now, to be clear... In neither circumstance are we talking about a huge number of cases. Is that correct? No matter whose argument is accepted. It's a diminishing number of cases, because we're 11, 12 years out past Booker. Certainly, it is a diminishing set of cases. But, based on past experience, I can certainly say, from what we've seen in the Seventh Circuit, once the doors are open to collateral relief for guidelines errors, the court doesn't need me to tell it. There are many defendants, many prisoners out there, who are going to try to avail themselves. And there have been suggestions made that, well, maybe career offender is somehow different, and, you know, it's results from 994-H. Look, the career offender guideline is still a guideline. And once the prisoner population sees that there's collateral relief for guidelines errors, there are going to be petitions filed. I'm not saying they have merit. I'm not saying they should have merit. But there's going to be litigation consequences. And, of course, as the Seventh Circuit has also seen, from Hawkins, for example, they're going to try to press it and say, well, there's no distinction between mandatory and advisory guidelines. It will spawn more litigation. Do you think the Eighth Circuit's decision is distinct from the Seventh Circuit's decision? There is a factual distinction. I agree completely with my opponents that there's a distinction because of the overlapping ranges. But I don't think that detracts from Sunbear's basic holding. What do you think is the fundamental error in the Seventh Circuit's Brown decision? Because, obviously, it reaches a... Correct. Yeah, Brown piggybacked off of Narvaez, which basically said that a misapplication of the mandatory career offender guideline is fundamental. I think there are problems, as we pointed out in our brief. We certainly disagree with that reasoning, and we endorse what Peterman said. We endorse the Eighth and the Eleventh Circuit's approach. But I would say this, and I'll just repeat what's really in the brief. What the Seventh Circuit said is that a misapplication of the career offender guideline makes the sentence unlawful or illegal. But, of course, that's a term of art. And what the Seventh Circuit itself had previously said is that an illegal sentence is one without statutory authorization. But, again, Mr. Narvaez's sentence, just like Mr. Hill's sentence, doesn't lack statutory authorization. That's why it doesn't raise the separation of powers concerns. And what the Seventh Circuit did is they blurred this distinction. They really said there's no distinction between the two. And, in fact, the only case the Seventh Circuit relied on to support that view was an ACCA case, which does involve an illegal sentence. So we think the reasoning of the Seventh Circuit is not persuasive. It's a distinct minority of one approach. It goes against the way the other circuits have analyzed the issue, and we just don't think that that sort of error ranks as a sort of fundamental claim. Again, we come back, I've come full circle in my last ten seconds, we come back to the question of what is a fundamental error, and what are the benchmarks that we're going to use to define whether or not something ranks as fundamental. There have been arguments that have been advanced, if I could just finish the sentence and then, if that would be... There have been arguments that have been advanced about ways to adopt a narrow holding or to limit the holding, but ultimately the threshold question is what is fundamental? It's got to be something more than just a reversible error. It's got to be something that truly is a miscarriage of justice. That's the common thread that we think links a Bailey scenario or a Skilling kind of situation where a statute is curtailed, or an ACCA error. We just don't think the guidelines situation presents those same fundamental concerns because whatever amount or modicum of discretion a court has under the guidelines to go above the range, it still is not... The top of that range, even when it's mandatory, doesn't bind the court in the same way that a legislative statutory maximum does. We think the better approach, the majority approach, is to draw the line at a separation of powers based concern, which is simply not implicated because all guidelines sentences, necessarily, if they're done correctly and lawfully, have to be within statutory limits. And so we can say it's an error, but it doesn't, in our view, rise to the level of a fundamental error. And if Congress were to say that drug offenders are entitled to a particular reduction, according to the guidelines, and that this applies to all offenders except career offenders, would that matter? I don't think so because, again, as Your Honor predicted, my answer is going to be that when it comes to retroactive amendments on the guidelines, there's a specific mechanism. So maybe I don't understand the Court's question, but if Congress were to say that the retroactive amendments apply but not to career offenders, was that the premise of the question? Would that matter to the question of whether it's fundamental? No, because I think that's a different sort of error. That's not the error that's being claimed here. The error is not...the basic error here is that that's a subsidiary consequence. What he's saying is I shouldn't have been a career offender and therefore I should get the benefit. But the basic claim is I shouldn't have been a career offender. And 2255E, the Savings Clause, is largely a judge-made provision. It refers to when it's inadequate to test the legality of detention. And there's nothing in there that speaks per se, but the way the test has evolved in terms of what's fundamental, I'm not sure that the question... the basic question is whether a career...a misapplication of the starting point for sentencing is fundamental. No, I understand that. I was trying to get Congress involved with a specific statement of intent that career... that we are giving a statutory benefit to everybody except career offenders. And then should someone who's not a career offender be locked into that category? Or should they be able to come in under the subsequent statute and say give me the benefit because I'm not a career offender? I think they have other...I think a 30...again, I'm sorry if I'm not understanding, but I think a 3582 motion is the proper way that... this wouldn't be brought up by way of a 2251. No, it wouldn't. It wouldn't. I'm just asking you. So basically, are you... I apologize if I'm not fully understanding. Well, I mean, I'm asking the question whether someone like this who happens to be a drug offender as opposed to someone else can come in and ask for a resentencing or does the judge simply say, well, look, the law is really clear. If you were sentenced as a career offender, you don't get the benefit. I think that he would...I think that Mr. Hill or someone in this situation where we've agreed that he's not a career offender, maybe there hasn't been a judicial determination, I think he's free to file a 3582 motion and say I'm not a career offender. I should get the benefit. I'm not taking a position on whether that motion should be granted, but I think it's a remedy that's available. But I think that's a distinct question. I understand. I understand. Yeah. I don't think there's anything that prohibits him from trying, but I'm not going to take a position on whether it should be granted. We'd have to analyze that and see departmentally whether that would be our position, whether he's entitled to it. Thank you. Thank you, Your Honors. Thank you, Your Honor. I just want to briefly touch on the point that you were just discussing with my colleague on the other side here. So this court in United States v. Webb, that's 760F 3513, noted that there is an established rule that individuals sentenced under the career offender guidelines are not eligible to apply under 3582. And I think that it's, first of all, it cuts against the government's floodgates argument to invite prisoners to file under 3582 in the hopes that they can also attack their career offender sentences that way. But I also think it's a very uncertain approach to the problem. But I want to turn almost immediately to a couple of things that the other side said about this court's cases. First of all, he indicated that this court has already held in Lubert that there's some sort of a distinction between statutory and guidelines maxims. And I just want to read what I think is the critical language from that case. It's at 411F 3rd at page 603. The court said that the plea agreement here was entered into prior to the decision in the Booker case, and it does not seem reasonable to give the phrase statutory maximum a post-Booker definition, i.e., the maximum sentence a judge may impose under the guidelines on the basis of the facts admitted by the defendant. I think that just cuts directly against the government's distinction here. It's clear that this court has recognized that in Booker, the Supreme Court said that the range authorized by the verdict is the guidelines range. It's not the statutory maximum. And even in a case where this court held a defendant to the term statutory maximum, it recognized that that distinction was no longer valid looking back at pre-Booker cases with a post-Booker The government is also leaning on Peterman, and we noted in our reply that that's somewhat in tension with their rejection of the actual innocence framework because that's really where Peterman gets started. But Peterman was also a case decided in 2001, well before Booker, and so what it says about whether or not courts, and it says courts generally do not review sentences within the statutory maximum, I think that's a poor guide in the pre-Booker landscape to what we should do now looking back with the benefit of Booker. Now, the government also wants to distinguish Booker, and I think that its attempts to do so are unpersuasive for two reasons. First of all, my colleague on the other side mentions Rodriguez. I want to be very clear, Rodriguez is a case that is interpreting ACCA, and what it says about what the maximum sentence is is what under ACCA state sentencing guidelines should be read to mean. So the provision in ACCA there is referring to whether a state conviction could be punishable by a certain term of imprisonment, and whether it should be the state's statutory maximum or the state's guidelines maximum that applies. And so all that language that the Court is leaning on to interpret the federal guidelines here is first of all interpreting the ACCA statute, not 2241, 2255, or anything else that we're talking about here. It's also dealing with a completely different system of laws. And I also want to resist the distinction between the Sixth Amendment context and the one we're talking about here, which is that the Sixth Amendment was implicated by the mandatory guidelines is that that guidelines maximum was the limit of the Court's discretion, the discretion that was authorized by the verdict of the jury or the facts admitted by the defendant. And to the extent that a Court imposed a sentence that was beyond those limits, that's where the Sixth Amendment tension came in. I think that that authorization by the facts or authorization by the discretion of powers concerns that the government is leaning on to try to distinguish our case. It's precisely the fact that the Court has exceeded the limits of its discretion that creates a separation of powers problem here and that means that the Court acted outside of its discretion. And you don't think there is a distinction between the discretion that is created pursuant to two different methods, one being an administrative regulation and one being a statutory determination? If I may, Your Honor, yes. I think that in the pre-Booker context that distinction is not persuasive. First of all, for the reason that I mentioned that I do think the career offender guideline is different because you have Congress directing a special punishment for a special category of offenders. My client's not in that category. But also because we're talking, the important thing here is that the judicial branch not arrogate to itself authority that it lacks. That's where the separation of powers problem comes in and that problem is directly implicated, as Booker explains, by an over the maximum guideline sentence during the mandatory, under the mandatory regime. And what is your response to your opposing counsel's suggestion that there may be an ability to request a 3582 alteration to the sentence for someone who is in fact no longer qualified as a career offender even though that person may not have 2241 remedies available? How would that work? I don't think that it would, Your Honor. I think that the rule is clear that people who have been sentenced as career offenders are categorically ineligible and my understanding of the practice of district courts is when you see on the face of the petition, career offender 3582, that piece of paper goes in the bin. 2241 is the only way in this situation you can clean up the record, so to speak, to have career offender no longer the designation. Even if it shouldn't be the designation, there's only one way to get rid of it. I think that's absolutely right, Your Honor. I don't think that a prisoner could be in a position of asking a court to revisit the substance of his sentence there at 3582. That's not what that section exists for. It's not for collateral review of sentences. It has a limited purpose to apply retroactive guidelines, and I don't think that the government's suggestion that that's a viable mechanism should give this court any pause in addressing this through what I think is the appropriate mechanism, the 2241. Thank you very much. Thank you very much. We appreciate your taking this case on, counsel, and thank you. Thank you.